The different acts respecting removals have been correctly adverted to, though he could not accord with the construction of those acts by the defendant's counsel. The language of the acts is general, and not confined to any species of claim. Taking all the acts together, it seemed to him that county entries might be removed, in case of being lost by better claims, to any part of the State, except within the military bounds, and the lands reserved to the use of the Indians by the Act of 1783. The seventh section of the Act of 1736, c. 20, according to his view of the subject, was opposed to the argument on the part of the defendant.
This section declares that all the surveys already made for removed warrants, in John Armstrong's office, shall be good. It will be recollected that two different laws had passed in April and October, 1784, authorizing removals generally. The making of the law of 1786 implies that a doubt had existed, whether the right of removal allowed by those laws extended to John Armstrong's claims. This section of the Act of 1786 puts the question, as to those claims, out of doubt. Now had the two first mentioned laws been passed with a view to John Armstrong's claims exclusively, it is scarcely probable the legislature would have found it necessary to pass a law in the year 1786, declaring the right of removal as extending to those claims. The second condition of the Cession Act, 1789, c. 3, provides for the perfection of all claims; and makes no alteration in the law respecting removals. Nor does the argument drawn from the second section of the Act of April, 1778, seem to be tenable. This section provides as to county entries, that, in cases where lands may be *Page 36 
lost by older claims, the purchase-money shall be refunded. The Acts of April, 1784, c. 14, § 7, and October, 1784, c. 19, § 6, in general language, provide, that all claims may be removed. These acts either intended to repeal the second section of the Act of 1778, or were intended as a cumulative remedy. The result is the same as to the question before the Court. It is however probable the latter was intended by the legislature. When we add to these considerations thepractice of the State of North Carolina in issuing grants cc removed county warrants, and the acquiescence of the United States after the Cession Act, but little doubt can remain of the intention of the legislature.
The absurdity insisted on by the defendant's counsel, in permitting removed county warrants, does not occur with the same force with which it was urged. When we consider when these acts passed respecting removals, John Armstrong's office was shut; all entries had been made that were intended; and as removals were not matter of right, but of grace, there was no injustice in permitting removals of county claims, within those bounds, more than to any other place. A removed warrant could not affect any claim previously entered in John Armstrong's or any other office. In authorizing removals, the State did not violate any rights previously acquired; and as to the price paid the State for county and John Armstrong's claims, it was the same, after John Armstrong's office opened.
The next point to be considered is, whether this court, sitting as a court of common law, can receive the evidence now offered. As between individuals, it occurs to me strongly that the consideration on which a grant issued from the State cannot, at least in a court of law, be inquired into, if it can in a court of equity, of which much doubt may be rationally entertained. It is however true, as stated by the defendant's counsel, that nearly all the instances in the English books, of avoiding or considering a grant from the king void, occurred in a court of law. But on examination, we shall find that many of the principles attached to the king's grants do not apply here, for reasons many of which will not be *Page 37 
noticed at this time. In the opinion given in the case of Vincent's Lessee v. Conrad,[1] they were adverted to at length. There is certainly much apparent contradiction in the cases respecting the king's grants, to say the least of it, as will be found by consulting Viner's and Bacon's Abridgments, title Prerogative of the King. One sensible distinction however may be perceived, that there are two kinds of grants in England, assertive and suggestive. The first does not contain any recital; the latter always does; and it has been adjudged there, that the consideration is not inquirable into in the first case. 12 Mod. 78, King v. Kemp; 27 Vin. Ab. 151, MC. in n. The grant before the Court is of the first kind, and does not contain any recitals of the suggestion of the grantee. It is not however to be understood but that the State might avoid its own grants on scirefacias, as against a person committing a fraud. Individuals ought not to be permitted to bring in question the consideration on which a grant issued, or whether it were regularly obtained or not. The State has issued a grant which does not contain any recitals, so as to put all men on an inquiry as to the truth of it. Such a principle would be repugnant to the ordinary principles of contracts. And, beside, would open a flood of inconveniences that would be intolerable. The mode of acquiring land titles is already complex, and if the legality or regularity of issuing grants could be made subjects of inquiry in all cases, there would be no end of confusion and distress.[2] Legate's case, 10 Co. 112, turned on the point of misrecital, and therefore it would seem does not apply to the case before the Court. It was conformable to the provisions of the laws of North Carolina, that a grant might issue for lands at this place, upon county claims, and that is all this court has to look to in a contest between two individuals. Whether a person having possession without any kind of *Page 38 
claim is competent to institute an inquiry into the plaintiff's grant, I will not undertake to say. If it were legal to make this inquiry, it would seem that he could not, because the evidence offered is of an equitable nature, and he had no doubt that it was not competent to any bare possessor of land to call into question any title good on the face of it.
[1] By 4 Am. Law Jour. p. 1.
[2] In the ease of Polk v. Wendell et als., in the S. C. U. S., the Court proceeded on the same principles, but say that there are two grounds on which the validity of a grant may be examined or inquired into, viz., want of property in the grantor, in the thing granted; and secondly, want of authority in the officers of government to execute the grant.